IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LANCE JOHNSON, | ) |
| Plaintiff, | ) |
| | ) NO. 3:23-cv-01379 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| HSA HOLLY ROBERTSON, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a "Motion for Emergency Preliminary Injunction" (Doc. No. 14, "Motion") filed by Lance Johnson ("Plaintiff"), a state inmate proceeding pro se.[1] Included in the Motion is a "Declaration in Support of Plaintiff's Motion for Preliminary Injunction" in which Plaintiff makes various allegations under penalty of perjury. (*Id*. at 3). Defendant Holly Robertson ("Robertson" or "Defendant")[2] filed a response (Doc. No. 21, "Response") opposing the Motion. Defendant also filed documents in support of the Response including declarations of herself (Doc. No. 23) and of Cynthia Christian ("Christian")[3] (Doc. No. 22).

---

[1] Despite its title and citation of "Rule 65.04 of the Tennessee Rules of Civil Procedure," (Doc. No. 14 at 1), the Motion is construed by the Court as seeking a preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure. The Court construes the Motion as one for a preliminary injunction under Rule 65(a) as opposed to one for a temporary restraining order ("TRO") under Rule 65(b) in part because Defendant has been given notice and an opportunity to respond to the Motion (circumstances universally applicable to a proper motion for a preliminary injunction but not universally applicable to a proper motion for a TRO).

[2] In his Complaint (Doc. No. 7), Plaintiff named as Defendants Trousdale Turner Correctional Center ("TTCC") and three individuals: Holly Robertson (Health Services Administrator at TTCC), John Doe, and Jane Doe. The Court previously dismissed from this action all Defendants except Robertson. (*See* Doc. No. 10 at 5–6).

[3] Christian serves as the Grievance Coordinator at the Trousdale Turner Correctional Center. (Doc. No. 22 at 1).

For the reasons stated herein, the Motion (Doc. No. 14) is denied.

## BACKGROUND[4]

Plaintiff, a state inmate incarcerated at the Trousdale Turner Correctional Center ("TTCC"), filed a pro se Complaint (Doc. No. 7, "Complaint") under 42 U.S.C. § 1983 asserting in relevant part an Eighth Amendment claim against the Health Services Administrator at TTCC, Robertson, in her official capacity. Johnson alleges that Robertson acted (and continues to act) with deliberate indifference to his serious medical needs. (*Id*.).

Plaintiff suffers from hypertension, high cholesterol, diabetes, and congestive heart failure. (Doc. No. 21 at 14). Via the Motion, Plaintiff recounts a long history of obstacles he claims he has encountered in obtaining adequate medical care since arriving at TTCC. (Doc. No. 14). Plaintiff arrived at TTCC on February 8, 2023, but (according to Plaintiff) was not seen in TTCC's medical department until July 20, 2023. (*Id*.). Plaintiff was taken to Nashville General Hospital on November 20, 2023[5] and, according to Plaintiff, admitted into the "Intense [sic] Care Unit due to the fluid build-up and stroke/heart attack level blood pressure due to lack of proper medical care . . . at T.T.C.C." (*Id*. at 4). Plaintiff was released from Nashville General Hospital on December 5,

---

[4] The following facts, unless somehow qualified herein, are taken as true for purposes of the Motion, because they are either: (1) asserted and evidentially supported at least to some degree by one party and not rebutted by the other side; (2) otherwise not in genuine dispute; (3) asserted and evidentially supported by one side to such an extent, or in such a manner, that they are credited by this Court even if rebutted to some extent by the other side; or (4) subject to judicial notice.

[5] At one point in the Motion, Plaintiff states that he was taken to an "outside hospital" on "11-20-2024." (Doc. No. 14 at 4). At another point, Plaintiff states he was taken to "Nashville General Hospital" on "11-20-2023." (*Id*. at 3). Given the context (particularly the fact that November 2024 had not occurred even as of the time Plaintiff filed this action, and that Plaintiff claims he was discharged in December 2023), the Court construes "11-20-2024" as a typographical error intended to read "11-20-2023." Moreover, the Court construes Plaintiff's use of "outside hospital" as a reference to "Nashville General Hospital."

2023 and prescribed medication[6] by the doctor who treated him there (*id*. at 3), but Plaintiff claims that Defendant did not provide him the prescribed medication when he returned to TTCC. (*Id*.). Plaintiff contends that as a result of "T.T.C.C. and [Robertson]" not providing him his prescribed medication, he started retaining fluid—swelling to the point that he became unable to wear shoes or boots—and his blood pressure again began rising to dangerous levels. (*Id*.).

Plaintiff asserts that his "constitutional right to have adequate medical care and to be free from Deliberate Indifference is being violated," and that he "is in the midst of the grievance process" but will likely "suffer irreparable injury by the time [he] could exhaust administrative remedies due to the suppression of grievances[] and denial of adequate medical care." (*Id*. at 2). Plaintiff requests (via the Motion) a preliminary injunction[7] requiring Robertson and her medical staff to "provide [Plaintiff with] prescribed medications (Entresto- (Heart medication) and (Farxiga- Kidney medication)."[8] (*Id*. at 1).

---

[6] Attached to the Motion, Plaintiff includes a list of drugs he claims he was prescribed, including: Entresto, Farxiga, Aspirin, Carvedilol, Lasix, Omeprazole, Lantus (insulin glargine), Spironolactone, and Lipitor (atorvastatin). (Doc. No. 14-1). Defendant does not dispute that Plaintiff was prescribed these medications to treat his various medical conditions. (Doc. No. 21 at 14).

[7] The Motion is Plaintiff's fourth attempt to obtain such relief; his first (Doc. No. 1, "First Emergency Motion"), second (Doc. No. 9, "Second Emergency Motion"), and third (Doc. No. 11, "Third Emergency Motion") attempts were denied due to various procedural deficiencies. Plaintiff's First Emergency Motion was denied because it was filed before any complaint commencing the case, meaning that the Court could not exercise jurisdiction. (*See* Doc. No. 4 at 3). Additionally, Plaintiff had not filed a proper In Forma Pauperis application or paid the full filing fee. (*Id*. at 2–3). Plaintiff's Second Emergency Motion (Doc. No. 9) was denied for failure to comply with Fed. R. Civ. P. 11 because it did not include Plaintiff's handwritten signature. (*See* Doc. No. 10 at 7). And Plaintiff's Third Emergency Motion was denied for failure to state with specificity the relief sought. (Doc. No. 13 at 3).

[8] Elsewhere in the Motion, Plaintiff requests broader preliminary injunctive relief—that the Court "require [Robertson] and medical staff to provide Plaintiff with the prescribed medication and medical treatment to prevent irreparable injury to Plaintiff." (Doc. No. 14 at 2). Plaintiff then cites the "[a]ttached document of prescribed medication" (Doc. No. 14-1) which refers to all of the drugs listed in a footnote above along with a dosage for each drug. Thus, the precise relief Plaintiff seeks is unclear to the Court. First, it is unclear whether Plaintiff seeks an injunction requiring Robertson to provide him with *all* of the drugs listed at Doc. No. 14-1, or only Entresto and Farxiga; second, it is unclear what Plaintiff means by his additional request for "medical treatment to prevent irreparable injury to Plaintiff." (Doc. No. 14 at 2).

LEGAL STANDARD

Those seeking a TRO (or preliminary injunction) must meet four requirements.[9] They must show a likelihood of success on the merits; irreparable harm in the absence of the injunction; the balance of equities favors them; and that the public interest favors an injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 403 (6th Cir. 2022).

Plaintiffs seeking a preliminary injunction may not merely rely on unsupported allegations, but rather must come forward with more than "scant evidence" to substantiate their allegations. *See, e.g.*, *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014); *Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) (vacating preliminary injunction when plaintiffs made no evidentiary showing on some elements of their claim, but instead made mere allegations regarding the treatment of COVID-19 in prisons); *McNeilly v. Land*, 684 F.3d 611, 614 (6th Cir. 2012) (upholding denial of preliminary injunction when plaintiff made only a "small showing" of evidence); *United States v. Certain Land Situated in City of Detroit*, No. 95-1118, 1996 WL 26915, *1 n.1 (6th Cir. Jan. 23, 1996) (noting a lack of evidence to support speculative allegations); *Boulding v. Corr. Med. Servs.*, No. 1:06-CV-811, 2008 WL 2095390, at *1 (W.D. Mich. Feb. 11, 2008), *report and recommendation adopted*, No. 1:06-CV-811, 2008 WL 2095387 (W.D. Mich. May 15, 2008) ("Plaintiff did not marshal any evidence in support of his motion [for a preliminary injunction]. Plaintiff's unsupported allegations do not suffice." (citations omitted)). In deciding a

---

[9] Published Sixth Circuit case law stands unmistakably for the proposition that these four items are *factors* rather than *requirements,* except that irreparable harm is a requirement (and, if it exists and thus keeps the possibility of a TRO alive, thereafter becomes a factor to be balanced along with the other three factors). *See, e.g.*, *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019). Alas, this case law is inconsistent with more recent Sixth Circuit case law and with Supreme Court case law (including the two cases cited above) describing these as all being requirements. The Court believes that it is constrained the follow the latter line of cases.

motion for preliminary injunction, a court may consider the entire record, including affidavits and other hearsay evidence. *Sterling v. Deutsche Bank Nat'l Tr. Co.,* 368 F. Supp. 3d 723, 725 n.2 (S.D. N.Y. 2019); *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 738 (D. Conn. 2018). In conducting the preliminary injunction analysis, the Court is not limited to the four corners of the complaint but rather may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding. *Express Franchise Servs., L.P. v. Impact Outsourcing Sols., Inc.*, 244 F. Supp. 3d 1368, 1379 (N.D. Ga. 2017); *Action NC v. Strach*, 216 F. Supp. 3d 597, 629 (M.D.N.C. 2016) (explaining that district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted).

ANALYSIS

**I. Likelihood of Success on the Merits**

A. *The Prison Litigation Reform Act of 1995 likely bars Plaintiff's action for now.*

Defendant makes multiple arguments as to why Plaintiff is unlikely to succeed on the merits of his Eighth Amendment claim. First, Defendant argues that the Prison Litigation Reform Act of 1995 ("PLRA") bars Plaintiff's action because Plaintiff did not exhaust his administrative remedies before filing this lawsuit. The PLRA provides, in pertinent part: "No action shall be brought with respect to prison conditions under [Section] 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

"[E]xhaustion is required even if the prisoner subjectively believes the remedy is not available, . . . . even when the state cannot grant the particular relief requested, . . . and "even where [the prisoners] believe the procedure to be ineffectual or futile . . . ." *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal citations omitted).

Although inmates are not required to specially plead or demonstrate exhaustion in their complaint, failure to exhaust is an affirmative defense under the PLRA that may serve as a basis for dismissal if properly raised and proven by a defendant. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Regarding the requirements imposed on prisoners by the PLRA, the Sixth Circuit has stated, "it is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (internal quotation marks and citation omitted).

CoreCivic of Tennessee, LLC ("CoreCivic")[10] maintains an administrative grievance system through which inmates at TTCC may seek relief for issues related to their conditions of confinement. (Doc. No. 22 at 1). Policy 501.1 ("Inmate Grievance Procedures"), which is attached to Christian's declaration, details all levels of CoreCivic's grievance process and is paraphrased by Christian as follows:

---

[10] The Court takes judicial notice that CoreCivic is the private corporation contracted to operate TTCC. *See Perkins v. Washburn,* No. 3:19-CV-00959, 2020 WL 3972749, at *4 (M.D. Tenn. July 14, 2020) (citations omitted). "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (quoting Fed. R. Evid. 201(b)). The Tennessee Department of Correction (TDOC) website reflects that CoreCivic is a private entity that manages the TTCC. *See* Trousdale Turner Correctional Center, TENNESSEE DEPARTMENT OF CORRECTION, https://www.tn.gov/correction/state-prisons/state-prison-list/trousdale-turner-correctional-center.html (last visited May 22, 2024). This asserted fact is subject to judicial notice because TDOC knows full well whether it is true and, it seems quite clear, would have every reason not to report this asserted fact unless it was true and no reason to report it if it was not true.

> First Level: An inmate must file a grievance using CR-1394 within seven calendar days of the occurrence or the most-recent occurrence giving rise to the grievance. The chairperson [of TTCC's grievance committee[11]] will review the grievance and log the grievance as received. The chairperson's response to the grievance will be written on CR-1394 following the chairperson's receipt and review of the supervisor's response. The chairperson and supervisor have seven working days to complete the response, which begins on the day that the grievance begins to be processed. If the inmate accepts the response, it will be documented on CR-3148.
>
> Second Level: Within five calendar days of being notified of the Level One response, the inmate may appeal the response to the grievance committee and the warden. A hearing will take place within five working days of the appeal's filing. Within five working days of the hearing, the grievance committee's proposed response will be documented on CR-1393 and will be forwarded to the warden. Within seven working days of receipt, the warden will forward his or her decision to the chairperson. Within five working days of receiving the warden's response, the chairperson will allow the inmate to review the grievance materials and response. If the inmate accepts the response, the chairperson will enter the approval on the grievance.
>
> Third Level: An inmate may appeal the Level Two response within five calendar days of receipt of the response. The chairperson will forward one copy of the grievance and all documentation to the deputy commissioner of operations or his or her designee. The Level Three response will be sent to the chairperson for distribution within twenty-five working days of the date the appeal was received. The chairperson will enter the final decision on the grievance. This response is final and is not subject to appeal.

(Doc. No. 22 (citing Doc. No. 22-2 at 2–4)).

Attached to Plaintiff's First Emergency Motion are several grievances related to his alleged lack of medical care that he filed with TTCC. (Doc. No. 1). However, Plaintiff fails to recognize the distinction between filing a grievance and exhausting remedies. Plaintiff offers no documentation indicating that before filing this lawsuit (or, for that matter, at any time thereafter), he pursued any grievance about the adequacy of his medical care through all three levels of the grievance process at TTCC. To the contrary, Defendant has pointed to only one grievance

---

[11] The TTCC grievance committee is composed of a staff chairperson appointed by the Warden or Superintendent and members of elected staff and inmates. (Doc. No. 22-1 at 2). The grievance committee provides a forum in which an inmate may resolve a grievance at Level 2 of the grievance process. (*Id.*).

("Grievance #282407") that Plaintiff filed and pursued through all three levels.[12] (Doc. No. 22-2). However, as noted by Christian in her declaration, Grievance #282407 made no mention of Plaintiff's alleged inadequate medical care. (Doc. No. 22 at 2 (citing Doc. No. 22-2)). Rather, the "subject" on Grievance #282407 was listed as "Job," and in it, Plaintiff called for the termination of Christian for her alleged failure to respond to his previously filed grievances. (Doc. No. 22-2 at 1, 5).

Although Plaintiff did not avail himself of the opportunity to do so here, a plaintiff in Plaintiff's position could argue that he failed to reach all three levels of TTCC's grievance procedure only because TTCC did not respond to his initial grievances and that therefore any argument by Defendant that the plaintiff's suit is barred for failure to exhaust his administrative remedies should fail on the merits. After all, the Sixth Circuit has recognized that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." *Risher v. Lappin*, 639 F.3d 236 (6th Cir. 2011) (quoting *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004)). Here, however, that argument would likely be futile because Plaintiff has offered nothing corroborating his assertion that the grievances attached to the Complaint and filed before Grievance #282407 were actually sent to TTCC through the proper channels in compliance with TTCC's Inmate Grievance Procedures. Christian asserts in her sworn declaration that grievances that do not contain a grievance number, the date received, and the signature of a grievance clerk have not actually and appropriately been submitted. (Doc. No. 22 at 2). The Court accepts this assertion as generally true (since it is unexceptional and based on Christian's personal knowledge gain in connection with her employment duties), and this assertion tends to refute any assertion by Plaintiff that he actually and appropriately submitted grievances that have not been

---

[12] Grievance #282407 was filed on October 20, 2023.

shown near the expected indicia of actual and proper submission. Here, the only grievance containing all of those required indicia is Grievance #282407; the required indicia are not contained in the copies of the earlier grievances (the ones that, unlike Grievance #282407, do contain complaints about inadequate medical care) found in the record. Thus, despite Plaintiff's (self-serving) assertion that he submitted these earlier grievances through the proper channels and in compliance with the Inmate Grievance Procedures, the Court cannot find that this likely is the case.

For the reasons stated above, Plaintiff's suit is likely barred (for now, pending exhaustion of administrative remedies) by the PLRA because Defendant has offered evidence showing that Plaintiff likely failed to exhaust his administrative remedies.

> B. *Plaintiff's claim is unlikely to succeed because he likely cannot show a corporate policy or custom that was the moving force behind his alleged injury.*

Defendant also argues that even if Plaintiff's suit was not currently barred by the PLRA and therefore could proceed on the merits, Plaintiff is unlikely to succeed on the merits of his Eighth Amendment claim because (according to Defendant) he cannot establish that he suffered a constitutional deprivation from a corporate policy or custom. As previously mentioned, Plaintiff has sued Robertson in her official capacity, which is equivalent to suing her employer. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (holding that "individuals sued in their official capacities stand in the shoes of the entity they represent"). The Court takes judicial notice that Robertson is an employee of CoreCivic, "the private corporation contracted to operate the TTCC." *Perkins*, 2020 WL 3972749, at *8 (citations omitted).

A private entity that "contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487

U.S. 42, 54 (1988)). In other words, such a private entity effectively counts as a "municipality" for purposes of the below-referenced principles regarding the liability of a municipality under § 1983. Therefore, § 1983 claims against private entities like CoreCivic are analyzed under a *Monell* theory (discussed immediately below) as if they were a municipal entity. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996).

Municipalities can be liable under Section 1983 only if the plaintiff establishes that: "(1) the plaintiff's harm was caused by a constitutional violation; and (2) the [municipality] was responsible for that violation." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). Notably, Municipalities cannot be held liable under Section 1983 on a *respondeat superior* theory. *Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, "municipalities are liable for harms resulting from a constitutional violation only when the injury resulted from an 'implementation of [the municipality's] official policies or established customs.'" *Spears*, 589 F.3d at 256 (quoting *Monnell*, 436 U.S. at 708 (Powell, J., concurring)). A claim of municipal liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision or custom promulgated by the defendant-municipality or its agent. *Monell*, 436 U.S. at 690–91. A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal (civil) rights violations. *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013). Any policy or custom must be the "moving force" behind the alleged injury. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, for § 1983 liability to attach against CoreCivic, a corporate policy or custom must have been the "moving force" behind the alleged injury. *See Savoie v. Martin*, 673 F.3d 488, 494

(6th Cir. 2012) (citing *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010)); *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011)).

Regarding Plaintiff's ability to show (for purposes of surviving an initial review under the PLRA) that a policy or custom was the "moving force" behind his alleged injury, the undersigned previously stated:

> Although Plaintiff's filings do not contain any direct allegations of a CoreCivic policy or custom being executed by Defendant Robertson, they do allege (1) that Samuel Moore, FNP-C, told Plaintiff in July 2023 that TTCC medical staff had been improperly medicating him and subsequently referred him to the outside hospital; (2) that Plaintiff was not sent to the hospital until several months later, when he was admitted to intensive care and prescribed multiple new medications; and (3) that "T.T.C.C. and HSA Holly Robertson" refused to provide him with the newly prescribed medications after he returned from the hospital. (Doc. No. 9 at 3; Doc. No. 9-1 at 6, 14, 24.) These allegations, liberally construed in Plaintiff's favor, are sufficient (though just barely) at this early stage to allow the official-capacity claim against Robertson to proceed, on the theory that she is acting pursuant to a CoreCivic policy or custom related to the provision of prescription medications, and that her actions pursuant to that policy or custom are causing Plaintiff harm.
>
> Accordingly, Plaintiff's Eighth Amendment claim against Defendant Robertson (in her official capacity only) will proceed for further development.

(Doc. No. 10 at 6–7).

As highlighted in the excerpt above, Plaintiff's allegations, even when accepted as true and liberally construed in Plaintiff's favor, were "just barely" enough to establish a policy or custom causing Plaintiff's alleged harm. But on the instant Motion, Plaintiff is not entitled to such leniency; unlike at the initial-review stage, at the preliminary injunction stage implicated by the Motion, Plaintiff bears the burden to show a likelihood of success on the merits of his claim. As Defendant points out, Plaintiff has failed to meet that burden because he has not pointed to any evidence tending to show that CoreCivic had a custom or policy of denying inmates access to necessary medical treatment. Plaintiff has not identified (nor supported with any evidence whatsoever) the existence of an illegal official policy or legislative enactment, an official with

final decision-making authority who ratified illegal actions, or a policy of inadequate training or supervision. To the contrary, Plaintiff has offered evidence of relevant policies, all of which appear to be geared toward securing adequate medical care for inmates. (*See* Doc. Nos. 23-1, 23-2, 23-3, 23-4, 23-5, 23-6, 23-7).

Nor has Plaintiff identified (much less supported with evidence) the existence of a custom or tolerance or acquiescence by CoreCivic of federal civil rights violations. Plaintiff has not pointed to a single instance beyond his own case in which CoreCivic has tolerated intentional (or, for that matter, unintentional) withholding of necessary medical care to inmates.[13] Accordingly, Plaintiff is unlikely to succeed at trial in showing that Robertson, acting pursuant to a policy or custom of CoreCivic, deprived him of a constitutional right.

### C. *Plaintiff has not demonstrated that Defendant likely was deliberately indifferent to his medical needs.*

Finally, Defendant argues that Plaintiff cannot establish that CoreCivic was deliberately indifferent to his medical needs, and thus Defendant cannot be held liable for failing to implement a policy. For a municipality to be liable under Section 1983 based on harm resulting from the failure to implement a municipal policy, the lack of a policy must amount to deliberate indifference to the injured party. *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004); *see also Escamilla v. Webb Cnty., Tex.*, No. 5:11-CV-13, 2015 WL 3771085, at *6 (S.D. Tex. June 17, 2015) ("For a [municipality] to be liable for failing to act affirmatively, such as a failure to train or supervise, or a failure to implement a policy, a plaintiff must show that the [municipality] was deliberately indifferent to the fact that its failure to act would likely cause violations of particular constitutional rights.") (citation omitted); *Cerbelli v. City of New York*, 600 F. Supp. 2d

---

[13] Nor has Plaintiff explained why his own situation, standing alone, reflects a custom or tolerance or acquiescence by CoreCivic of federal civil rights violations, particularly deliberate indifference to inmates' serious medical needs.

405, 412 (E.D.N.Y. 2009) ("To the extent plaintiff's *Monell* claim is based on [a municipality's] alleged failure to train or supervise employees, or its failure to implement a policy or program responding to a problem adequately, plaintiff must show that the alleged failure 'amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact.'" (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989))).

Establishing deliberate indifference to a serious medical need to obtain preliminary injunctive relief requires "a substantial showing and neither negligence nor a mere disagreement over the wisdom or correctness of a medical judgment is sufficient . . . ." *Faulkner v. Alexander*, No. 3:13-0654, 2013 WL 5758849, at *2 (M.D. Tenn. Oct. 24, 2013), *report and recommendation adopted*, No. 3-13-0654, 2013 WL 6048231 (M.D. Tenn. Nov. 14, 2013) (citing *Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995)). A deliberate-indifference claim includes both objective and subjective components. *Blackmore*, 390 F.3d at 895. "The objective component requires the plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him 'the minimal civilized measure of life's necessities.'" *Grissom v. Davis*, 55 F. App'x 756, 758 (6th Cir. 2003) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The subjective component requires showing that "prison officials have a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895 (internal quotation marks and citations omitted). Courts distinguish between claims alleging a complete denial of medical care and claims alleging that the inmate received inadequate medical treatment. *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). "[F]ederal courts are generally reluctant to second guess medical judgments" where an inmate alleges that the medical care he received was inadequate. *Id.* (citing *Westlake*,

537 F.3d at 860 n.5). "However, it is possible for medical treatment to be 'so woefully inadequate as to amount to no treatment at all.'" *Id*. (quoting *Westlake*, 537 F.3d at 860 n.5).

In his sworn affidavit, Plaintiff asserts that after he was released from Nashville General Hospital on December 5, 2023, Defendant did not give him the medication prescribed to him by the doctors at Nashville General Hospital. (Doc. No. 14 at 3). Plaintiff also contends that Defendant did not provide a diabetic diet that is "required for [his] medical needs." (*Id*.). According to Plaintiff's affidavit, Defendant's alleged failure to provide these medications and dietary items caused his blood pressure to again rise to dangerous levels. (*Id*.).

Defendant seeks to counter Plaintiff's assertion that he did not receive adequate medical care by pointing to her own declaration wherein she states that since Plaintiff arrived at TTCC, medical providers have evaluated him on numerous occasions and have prescribed him medications to treat his various conditions. (Doc. No. 21 at 14 (citing Doc. No. 23 at 2)). Additionally, Robertson stated in her declaration that Plaintiff was evaluated on January 24, 2024, March 13, 2024, and March 26, 2024 as part of his "Chronic Disease Treatment Plan." (*Id*. (citing Doc. No. 23 at 2)). Finally, Defendant acknowledges that Plaintiff has been prescribed all of the medications to which he seeks access via the Motion. (*Id*. (citing Doc. No. 23 at 2–3)). Defendant asserts that because Plaintiff has received the treatment discussed above, he cannot show that he was denied access to medical care. (*Id*.).

Although Plaintiff's affidavit *might*, on a motion for summary judgment, be sufficient to create a genuine issue of material fact as to whether Defendant actually provided the medication he was prescribed, his self-serving affidavit alone is not enough to warrant a preliminary injunction. As the Sixth Circuit has observed, consistent with the notion that (unlike a denial of a defense motion for summary judgment) a preliminary injunction is an extraordinary remedy, "the

proof required for [a] plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (citations omitted). Plaintiff simply has not met this more stringent burden. Even if denial of the medication Plaintiff seeks could be said to deprive Plaintiff of "the minimal civilized measure of life's necessities" (thus satisfying the objective component of deliberate indifference), Plaintiff is unlikely to be able to establish the subjective component of deliberate indifference because (at this early stage) the record contains no evidence indicating that Defendant actually received any grievances requesting the medication that Defendant allegedly did not provide.

Accordingly, at this stage in the proceedings and without a developed record, the Court concludes that Plaintiff has not shown that he is likely to succeed on the merits of his Eighth Amendment claim.

## II. Irreparable Harm

To merit a preliminary injunction, an injury must be both certain and immediate, not speculative or theoretical. *Sumner Cnty. Schs.*, 942 F.3d at 327. Plaintiff has not established that he would suffer a certain and immediate injury in the absence of a preliminary injunction. As explained above, Plaintiff has offered no evidence showing that without the medication he seeks his condition is in fact life-threatening (and immediately life-threatening, at that). Although Plaintiff states in his affidavit that in November 2023 he was admitted into the ICU for treatment related to a build-up of bodily fluid, (Doc. No. 14 at 3), Plaintiff has offered nothing other than his own speculation to support his assertion that a similar result would follow absent the preliminary injunction he seeks.

Moreover, nearly five months have elapsed since Plaintiff filed his First Emergency Motion seeking the same "emergency" relief he now seeks via the Motion. As far as the Court is aware, Plaintiff has not suffered any life-threatening condition or serious medical issues resulting from Defendant's alleged failure to provide Plaintiff with the prescribed medication. This indicates that either (i) contrary to Plaintiff's assertions, Defendant has not actually withheld the prescribed medication, or (ii) to the extent the medication has been withheld, such withholding has not resulted in grave medical consequences. Either way, the indication is that Plaintiff would not suffer immediate and irreparable harm if he is not afforded the "emergency" relief he seeks.

Accordingly, Plaintiff has not met his burden to show that he would suffer irreparable harm in the absence of a preliminary injunction.

### III.    Balance of Hardships

Finally, Plaintiff must show that the balance of equities favors him and that the public interest favors an injunction. Plaintiff asserts that granting the injunction would not substantially harm Defendant because it would require Defendant merely to "tak[e] [P]laintiff to a suitable doctor and then carry[ ] out the doctor[']s orders"—something Defendant is required to do on a daily basis for inmates. (Doc. No. 14 at 4). By contrast, Plaintiff argues, Plaintiff will suffer more significant harm due to the "life threatening nature of [the] issue herein" if the injunction is not issued. (*Id*. at 2).

The Court agrees that in this particular case, the burden on Defendant to comply with the injunction Plaintiff seeks would not be significant. But with respect to the requirement that the public interest favor the injunction, the Court recognizes, as other courts have, that "absent extraordinary and urgently compelling reasons" it is imprudent for courts to "intervene in matters such as the day-to-day medical care operations in a correctional facility." *Faulkner*, 2013 WL

5758849, at *2. Such intervention, again, absent extraordinary reasons, would not serve the public interest. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995) (noting that the involvement of federal courts in the day-to-day management of prisons often "squander[s] judicial resources with little offsetting benefit to anyone"); *Hill v. McKee*, No. 1:10-CV-470, 2010 WL 5559323, at *1 (W.D. Mich. Aug. 27, 2010), *report and recommendation adopted*, No. 1:10-CV-470, 2011 WL 65862 (W.D. Mich. Jan. 9, 2011) ("The public interest would not be served by unnecessary and unwarranted judicial interference in the day-today operations of the Michigan Department of Corrections.").

So even if the balance of hardships favors Plaintiff, that does not change the result, because Plaintiff has not satisfied any of the other requirements. *See Sisters for Life*, 56 F.4th at 404. Therefore, Plaintiff would still be unsuccessful in obtaining preliminary injunctive relief.

## CONCLUSION

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary*, 228 F.3d at 739). The Court does not take lightly the seriousness of the allegations made in Plaintiff's Complaint; applicable personnel at TTCC (including Robertson) might be prudent to give all due attention to Plaintiff's medical concerns. But Plaintiff simply has not met the heavy burden required to obtain such extraordinary relief.

Accordingly, Plaintiff's Motion (Doc. No. 14) is DENIED.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE